[Civ. No. 20507.   Second Dist., Div. Three.   June 22, 1955.]

CLARENCE J. WILSON, Appellant, v. LOS ANGELES
TRONA STAGES, INC. (a Corporation), et al., Re-
spondents.

Zeman, Hertzberg & Schekman and Samuel Schekman for
Appellant.

Harry E. Sackett, Belcher, Kearney & Fargo and Louis E.
Kearney for Respondents.

WOOD (Parker), J.—Action for damages for personal in-
juries sustained by plaintiff who was a paying passenger on
a bus of the corporate defendant which was a common carrier
of passengers.   Defendant Luck was the driver of the bus.
In a trial by jury, judgment was for defendants.   Plaintiff
appeals from the judgment.

On the day of the accident, June 13, 1952, Luck drove
the bus from Los Angeles to Trona, leaving Los Angeles about
8:30 a. m. and arriving in Trona about 3:30 p. m.   About
5:45 p. m. of that day he left Trona, driving the bus on the

return trip to Los Angeles. About 6 p. m., the plaintiff entered the bus at West End, California. About 10:15 p. m., when the bus was about 2 miles west of Upland, there was a head-on collision between the bus and an automobile (which automobile was on the wrong side of the highway), and as a result thereof plaintiff was injured.

The highway at and approaching the scene of the collision extended east and west, was approximately level, and consisted of four marked traffic lanes—two lanes for westbound traffic (north side of highway) and two lanes for eastbound traffic (south side of highway). Between the westbound and eastbound lanes (that is, in the middle of the highway) there was a space about 5 feet wide and on each side of that space there were double white lines. In other words, in the middle of the highway there were two sets of double white lines and the sets were about 5 feet apart. (The distance of 5 feet is an estimate indicated by photographs of the highway which are exhibits herein.) The two westbound lanes were separated by a "broken" white line, and the two eastbound lanes were separated by such a line. Subject to the provisions of the basic speed law (Veh. Code, § 510), the prima facie speed limit in the vicinity of the accident was 55 miles an hour.

Plaintiff testified that he was sitting in the sixth seat (from the front), on the right side of the bus and next to the aisle; within a mile or two of the place where the accident occurred the bus was traveling about 70 miles an hour, next to the center of the highway; as the bus was approaching the place that was later known as the place of the accident, he saw a couple of lights ahead of the bus, saw an eastbound car coming and its lights were blinking; the impact threw him against the seat; his shoulder was injured; he did not feel any application of the brakes of the bus; he did not hear the sound of a horn.

Mr. Clark, called by plaintiff, testified that he was a passenger on the bus, sitting on the right front seat next to the aisle; the driver of the bus was on the left side of the bus and a little in front of him (witness); after the bus left Upland and when it was within 500 to 1,000 feet of the place of the accident it was traveling 60 to 65 miles an hour in the lane next to the shoulder of the highway; shortly before the impact and while his head was reclining on the back of the seat, he heard a man, in the next seat to him, yell; he (witness) raised up and saw the driver was standing crouched behind the steering wheel, turning the wheel to the left; he

(witness) saw, through the windshield, the lights of an oncoming car (coming east) and the lights were blinking—they blinked once or twice; he could not tell which lane the lights were in—they were 7 or 8 feet to the left of the bus; the bus turned to its left; the accident happened two or three seconds after he raised up; he did not feel any slackening of the speed of the bus before the accident; he saw lights of other vehicles proceeding east on the southside of the highway; he has an action pending against defendants.

· Defendant Luck testified that after he left Upland he was driving west in the right-hand lane next to the north shoulder; the bus was fairly new and was equipped with air brakes which were in good condition; as he approached the place of the accident he was traveling at a steady rate of not more than 50 miles an hour; he did not increase or decrease the speed before the accident; up to within a second of the point of impact he did not see the automobile with which the bus collided; the automobile was going east; he did not remember whether the lights of the automobile were on; he could not make an estimate of the distance between the bus and the automobile when he first saw the automobile; he did not see the automobile until it was within a distance that could be traveled within a snap of the fingers; he could not estimate the speed of the automobile; after he saw the automobile it continued straight east, and he continued straight west but he tried to turn to the left; the front end of the automobile and the front end of the bus collided; at the time of the collision the bus was on the white line which divides the two westbound lanes; he did not see the automobile cross the double white line; he did not apply the brakes of the bus; after the collision the automobile stopped "right there," and the bus went 40 feet to its left (southwest) across the highway to the south shoulder of the highway; he did not sound the horn; his lights were on low beam and would disclose "an object" for a distance of 10 feet; on high beam the lights would disclose an object for a distance of 300 feet; the lights of the bus had been on about four hours and were in normal working order; immediately before the accident he did not stand up—he remained seated.

Mr. Stage, called by defendants, testified that he was driving a pickup truck east on the southside of said highway and he saw the accident; his wife was also in the front seat of the truck; when he was about 2 miles west of the place where the accident occurred he was in the lane next to the

center or double line, and at that time a Buick automobile pulled out from a restaurant south of the highway, crossed the highway at a place about 200 feet in front of his (witness') truck, crossed the double line and proceeded east on the wrong side of the highway; he continued to observe the Buick until the accident occurred; he (witness) continued to drive for a minute and a half or two minutes, or for a distance of approximately 1½ miles, in the lane next to the double line, and then he went into the outside lane next to the south shoulder; during that time the Buick continued east on the northside (wrong side) of the highway just north of the double lines; also during that time the Buick and truck were traveling about 50 miles an hour, and the Buick was about 20 feet ahead of the truck; after the witness (in his truck) was in the outside lane he increased his speed to 60 or 65 miles an hour in order to pass the Buick; after speeding up he traveled about 300 feet before he passed the Buick; while he was passing the Buick he saw the lights of an approaching vehicle, which vehicle was on the northside of the highway and was later in collision with the Buick; the lights were about 1 mile away when he first saw them; when the bus was in a position where he could estimate its speed, it was traveling about 50 to 55 miles an hour; when the collision occurred he (witness) was approximately 15 to 20 feet past the Buick, and he stopped his truck 75 to 100 feet beyond the place of the accident; the bus, immediately before the point of the accident, was astraddle the single white line on the northside and the Buick appeared to be angling toward the north—had turned to its left or north of the single white line; prior to the accident, when the bus came into view, the witness dimmed the lights of his truck; the lights of the bus blinked; the blinking occurred about five seconds before the impact; he did not remember which lights blinked first; he did not recall whether lights were on the Buick when it went across in front of him, and he could not say whether there was a taillight on the Buick when it was on the wrong side of the highway; there was no traffic on the highway, except his truck, the Buick and the bus.

It was stipulated that Mrs. Stage would testify in substance the same as Mr. Stage testified. She testified further that it was a clear night; and she could see the Buick at all times while it was on the wrong side of the highway.

The driver of the Buick was killed in the collision. It was stipulated that a director of a certain laboratory would

testify that he made a chemical analysis of the blood of the driver of the Buick shortly after the accident; the analysis was 0.20 per cent ethyl alcohol in the blood; according to accepted medical standards the presence of 0.15 per cent alcohol in the blood indicates intoxication; the tests vary with different individuals, and because the driver died it could not be said whether 0.20 per cent alcohol in his blood would produce intoxication.

Appellant contends that the court erred prejudicially in giving certain instructions.

One of the instructions, so referred to and given at the request of defendants, was: "The driver of the bus in question, if exercising the care required of him under the law, had a right to assume and act upon the assumption that the drivers of other vehicles upon the highway would obey the law and would not in violation thereof interfere with the operation of the bus. Therefore, under such circumstances, it was not negligence on the part of the driver of the bus to fail to anticipate that some other driver might violate the law, if you should find such to have been the case at the time and place of this accident." The defendants owed the plaintiff the duty of using the utmost care, and the jury was so instructed. The doctrine of res ipsa loquitur was applicable herein, and the jury was instructed that an inference of negligence on the part of defendant arose. An important question was whether the inference of negligence on the part of defendant was rebutted. Another important question was whether the bus driver, who was required to exercise the utmost care, should have seen the Buick before the instant of the head-on collision. ▮ Two witnesses, called by defendant, testified that, prior to the head-on collision, the Buick was on the wrong side of the highway for a distance of approximately 1½ miles. Those witnesses did not notice, and the bus driver did not remember, whether there were lights on the Buick. The highway was approximately level for a long distance on each side of the place where the accident occurred. The night was clear. The two witnesses could see the lights of the bus a mile away. The bus driver testified that the bus lights were on low beam and that such lights would disclose an object for a distance of 10 feet. Section 648, subdivision (d), of the Vehicle Code provides that lighting beams should reveal a person or vehicle for a distance of at least 100 feet ahead. The above-quoted instruction, regarding the bus driver having a right to assume

that other drivers would obey the law, should have included a qualification or exception to the effect that a right to assume that drivers of other vehicles would obey the law does not exist when it is apparent, or in the exercise of utmost care it would be apparent, that another driver is not obeying the law. Under the circumstances of the present case where the bus driver was required to use utmost care, and where an inference of his negligence arose, and where the driver of the Buick was driving on the wrong side of the highway toward the bus for approximately two minutes before the collision, the preliminary condition stated in the above-quoted instruction, namely, "if exercising the care required of him [bus driver] under the law," was not an adequate qualification of an instruction to the effect that a driver may assume that other drivers will obey the law. A reference to the original file of the case (in the county clerk's office) shows that a notation at the bottom of the instruction is "See Form 138—BAJI." That form includes the substance of the instruction as given herein, and it also includes, as a second part thereof, the following statement: "However, an exception should be noted: the rights just defined do not exist when it is reasonably apparent to one, or in the exercise of ordinary care would be apparent to him, that another is not going to perform his duty." It is to be noted that the principle of law referred to in the second part of that form (either as the principle pertains to the use of ordinary care or utmost care) was omitted from the instruction as proposed by defendants. In *Edlund* v. *Los Angeles Ry. Co.*, 14 Cal.App.2d 673 [58 P.2d 928], wherein only ordinary care was required of the drivers, it was said at page 675: "One may not continue to assume that the law is being observed after knowing or having an opportunity, by the use of reasonable care, to know that it is not being observed." In *Angier* v. *Bruck*, 56 Cal.App.2d 55 [131 P.2d 876], wherein automobiles collided at an intersection, the jury was instructed (p. 58) at the request of plaintiff that if plaintiff "was at all times pertinent to this case driving plaintiff's automobile in a careful and prudent manner, and exercising that degree of care which is ordinarily exercised by cautious persons, then he had a right to assume that the defendant, James Platt, would drive his automobile in a lawful manner and would exercise for his own safety, the care and caution which an ordinarily prudent person would exercise under the same or similar circumstances." It was held therein that the in-

struction was erroneous in that it did not include the qualification that one may not continue to assume that the law is being observed after knowing or having an opportunity, by the use of reasonable care, to know that it is not being observed. In reversing the judgment for plaintiff, it was said therein at page 60: "Plaintiff attempts to escape this result by pointing to the preliminary condition stated in the instruction, 'if Raymond Angier [plaintiff] was at all times pertinent to this case driving plaintiff's automobile in a careful and prudent manner . . . then he had a right to assume' etc. This apparently, and as the jury must have understood it, refers to acts done before the making of the assumption referred to. It cannot serve the purpose of a plain statement of the qualification of the rule, which relates to conduct of the driver after he has made the assumption referred to in the instruction. . . . The qualification which was omitted is an essential part of the rule attempted to be stated. Defendant was entitled to have it enunciated in clear and positive language." In the present case, respondents state that giving of the criticized instruction was upheld in *Silva* v. *Pacific Greyhound Lines,* 119 Cal.App.2d 284, 289 [259 P.2d 743]. It is to be noted that the instruction in that case did include (p. 290) the above-quoted qualification to the effect that the right to assume that other drivers will obey the law does not exist when it is apparent or should be apparent that another driver is not obeying the law. Under the circumstances of the present case it was prejudicial error not to include such a qualification or exception in the said instruction which was given at the request of defendants. Such a qualification or exception was not covered by other instructions.

By reason of the above conclusion, it is not necessary to discuss other questioned instructions.

Reference should be made to the manner in which the attorneys for appellant have prepared their opening brief. On page 6 thereof there is a misquotation in purporting to quote from the opinion in *Huetter* v. *Andrews,* 91 Cal.App.2d 142 [204 P.2d 655]: Their brief states, in part: "Where 'there is a substantial conflict in the evidence. . . .' " The opinion states, in part (p. 145): ". . . when there is no substantial conflict in the evidence. . . ." Also in their brief they quote several instructions wherein the words "negligence" or "negligent" appear, and they have italicized those words. Many of the instructions so quoted, and in which those words were

italicized, were requested by appellant and respondents. Appellant's attorneys assert that those instructions were erroneous. Presumably the italics were used by appellant's attorneys to emphasize alleged errors of the court in giving the instructions which they requested. Also, appellant's attorneys have placed various instructions in such sequence in their brief as to create the impression that the instructions were given in that sequence. Those matters of misquotation, asserting error in their own requested instructions, italicizing certain words, and arranging sequence of the instructions, were pointed out in respondents' brief. Appellant did not file a reply brief or make any reply to respondents' criticism as to those matters, except that at oral argument Mr. Schekman said, in response to a question by this court, that criticism of the arrangement of the instructions was justifiable. The manner in which appellant's brief has been prepared is not commendable.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.